<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEVERLY A. WEED-SCHERTZER and HOWARD SCHERTZER,<br><br>                              Plaintiffs,<br>v.<br><br>NUDELMAN, KLEMM & GOLUB F/K/A NUDELMAN, NUDELMAN & ZIERING, P.C.,<br><br>                              Defendant. | Civil Action No. 10-6402 (WJM)<br><br><br><u>REPORT AND RECOMMENDATION</u> |

<u>FALK, U.S.M.J.</u>

This is a case brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). The matter is before the Court upon Plaintiffs' motion for an award of attorney's fees and costs in the amount of $9,340.50, following the acceptance of an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. [CM/ECF No. 14.] The motion is opposed. The Honorable William J. Martini, U.S.D.J., referred the motion to the Undersigned. No argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, this Court concludes that the hourly rates proposed and hours expended should be reduced. Accordingly, it is respectfully recommended that Plaintiffs be granted $4,742.50 in attorney's fees and $350.00 in costs and expenses for a total

award of $5,092.50.

## BACKGROUND

Plaintiffs filed their Complaint on December 9, 2010, alleging Defendant, Nudelman, Klemm & Golub, violated the FDCPA in attempting to collect on a state court judgment entered against Plaintiff Howard Schertzer.  Defendant is a debt collection law firm.  In 2009, Defendant secured a judgment against Plaintiff Howard Schertzer and his first wife, Helene Schertzer (now deceased).  Defendant attempted to collect the judgment by executing on a bank account jointly held by Plaintiff Howard Schertzer and his second wife, Plaintiff Beverly Weed-Schertzer.  Plaintiffs allege Defendant's collection effort violated the FDCPA because the bank account contained funds belonging solely to Beverly Weed-Schertzer, who does not owe the debt.

Prior to its resolution, the case was litigated lightly and briefly.  Defendant filed its answer on March 4, 2011.  Thereafter, discovery was prepared and served but never responded to by either party.  On April 15, 2011, the Court had its only conference in this case, an approximately 15-minute long telephonic scheduling conference.  On April 24, 2011, Defendant served an Offer of Judgment ("the Offer") pursuant to Federal Rule of Civil Procedure 68, stating in relevant part:

> Defendant [] . . . hereby offers to allow judgment to be taken
> against it in the amount of $1,501.00 (One Thousand Five
> Hundred Dollars and no cents), plus 1) your reasonable
> attorneys fees and costs, through the date of this Offer of
> Judgment, as may be determined by the Court; 2) your actual
> costs for the filing fee of your complaint in the United States
> District Court; and, 3) your actual costs for service of the

2

summons and complaint upon the Defendant.

(Pls.' Mot., Ex. A; CM/ECF No. 14-3.)

Plaintiffs accepted the Offer on May 8, 2011. The parties negotiated but were unable to settle the issue of Plaintiffs' reasonable attorney's fees. On June 8, 2011, Plaintiffs filed the present motion for attorney's fees and costs. On July 4, 2011, Defendant filed its opposition.[1]

Plaintiffs' motion seeks $9,340.50 in attorney's fees and costs billed by four attorneys and two paralegals. Plaintiffs' four attorneys billed their time at the following hourly rates: Craig T. Kimmel, Esq. ($425.00 per hour); Amy L. Bennecoff, Esq. ($300.00 per hour); Sarah Young, Esq. ($300.00 per hour); and Tara L. Patterson, Esq. ($300.00 per hour). Paralegals Christy Sunchych and Jason Ryan were billed at $165.00 and $155.00 per hour, respectively. In total, in this abbreviated case resolved before discovery, Plaintiffs' counsel represent that they billed 30.7 hours and incurred nearly $10,000.00 in fees.

---

[1] Plaintiffs have filed a motion to strike Defendant's opposition as "untimely." [CM/ECF No. 17.] Defendant concedes that its opposition brief was untimely because they mistakenly confused the date for submitting opposition with the return date of the motion; however, it contends there is no prejudice to Plaintiffs by allowing the opposition because Plaintiffs still had an opportunity to (and ultimately did) file a reply brief. The Court has broad discretion with respect to timing and scheduling considerations, and it is within that discretion to permit an untimely opposition brief. See, e.g., Ikenlionwu v. Nash, No. 06-625, 2008 U.S. Dist. LEXIS 21791, at *4 n.1 (D.N.J. Mar. 19, 2008); cf. Yakowicz v. Pennsylvania, 683 F.2d 778, 784 (3d Cir. 1982). Therefore, Plaintiffs' motion is **denied**.

Defendant opposes Plaintiffs' fee motion on several grounds. It contends that the fees are excessive; that the attorneys engaged in duplicative and unnecessary work; that the hourly rates charged are excessive; that Plaintiffs improperly seek to recover for fees incurred after the date of the Offer of Judgment; that the motion is "inadequately supported"; and that other courts in this Circuit have rejected hourly rates and certain hours proposed by the same Plaintiffs' counsel in comparable cases. (Def.'s Br. 1-3, 5, 9-10.)

## DISCUSSION

### A.   Legal Standard

The Fair Debt Act provides that "in a case of any successful action," a prevailing party may recover, "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Absent unusual circumstances, the award of attorneys fees and costs to a prevailing plaintiff in a FDCPA case is required. See Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991). However, the quantum of any fee award must be guided by a "reasonableness" standard that necessarily implicates "the facts and circumstances of the underlying litigation." Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628-29 (4th Cir. 1995).

A reasonable attorney's fee is one that is "adequate to attract competent counsel, but which does not produce a windfall to attorneys." Public Interest Research Group of N. J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995); see also Apple Corps Ltd. v.

Int'l Collectors Soc., 25 F. Supp. 2d 480, 484 (D.N.J. 1998). The Court is guided by the well-known "lodestar" method, which requires multiplying the hours reasonably expended by a reasonable hourly rate. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433-37 (1983); Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). The party seeking fees has the burden to come forward with evidence establishing the number of hours worked and the reasonableness of the rate claimed. See, e.g., Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). Any party may oppose a fee application by objecting with "sufficient specificity." Id. If an objection is lodged, the party seeking to recover fees bears the burden to show that the fee request is reasonable. Id.

While the lodestar is presumed to yield a reasonable fee, Washington v. Pa. County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996), either party may seek an adjustment of the lodestar amount but bears the burden to show an adjustment is necessary. Mosaid Techs., Inc. v. Samsung Elecs. Corp., 224 F.R.D. 595, 597 (D.N.J. 2004). In deviating from the lodestar, courts may consider numerous factors, including, for example, the time spent and labor required; the novelty and difficulty of the legal issues; the customary fee in the community; whether the fee is fixed or contingent; the nature and length of the professional relationship with the client; and awards in similar cases. See Public Interest Research Group, 51 F.3d at 1185 n.8 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

The district court ultimately "retains a great deal of discretion in deciding what a

reasonable fee award is," Bell v. United Princeton Properties, 884 F.2d 713, 721 (3d Cir. 1989), and "in determining whether the fee request is excessive . . . the court will inevitably engage in a fair amount of 'judgment calling' based upon its experience with the case and the general experience as to how much a case requires." Evans v. Porth Auth.of NY & NJ, 273 F.3d 346, 362 (3d Cir. 2001).

B.   **Application**

Plaintiffs seek $9,340.50 in attorney's fees billed by four attorneys and two paralegals. Defendant counters that an appropriate fee would be $3,902.50. Contending the hourly rates and hours billed are excessive, Defendant's opposition reveals that Plaintiffs' counsel sought fees in a fair debt case in the last few months using a nearly identical brief and supporting evidence as has been submitted here—and in that case, Plaintiffs' counsel's proposed hourly rates and hours expended were reduced or eliminated. See Williams v. NCO Fin. Sys., No. 10-5766, 2011 U.S. Dist. LEXIS 50635 (E.D. Pa. May 11, 2011) (reducing rate of Mr. Kimmel; excluding all time billed by Ms. Bennecoff and Ms. Patterson). The Court's review of the case cited by Defendant, as well as additional research, discloses three additional cases relying on the same submissions, which also resulted in reduced hourly rates and hours billed for Plaintiffs' counsel. See, e.g., Brass v. NCO Fin. Sys., Inc., No. 11-1611, 2011 WL 3862145 (E.D. Pa. July 22, 2011) (reducing rates of Mr. Kimmel, Ms. Bennecoff, and Ms. Patterson); Overly v. Global Credit & Collection Corp., Inc., No. 10-2392, 2011 WL 2651807 (M.D.

Pa. July 6, 2011) (reducing rates of Mr. Kimmel, Ms. Bennecoff, Ms. Patterson, and Ms. Young; as well as, paralegals Mr. Ryan and Ms. Sunchych); Alexander v. NCO Fin. Sys., No. 11-401, 2011 WL 2415156 (E.D. Pa. June 16, 2011) (reducing rates of Mr. Kimmel, Ms. Bennecoff, and Ms. Patterson). A fifth case has been identified in which Plaintiffs' counsel again relies on the same submissions and again has its billable hours reduced. See Rivera v. NCO Fin. Sys., E.D. Pa., Docket No. 11-402, CM/ECF No. 7, Slip. Op. (5/2/11) (reducing hours expended; however, upholding hourly rates).[2]  However, the

---

[2] Apparently the opening memorandum of law and the supporting affidavits and documentation submitted by Plaintiffs' counsel in this case are nearly identical to those that have been filed in five Pennsylvania cases.

More specifically, the opening fee submissions in all six cases (this case and five in Pennsylvania) are nearly verbatim reprints. Literally, the opening memorandum of law in this case is supported by a 34 page brief, more than 31 pages of which are reprinted, copy-and-paste style, from the briefs filed in the previous cases in Pennsylvania. *Compare* Pls.' Br. (D.N.J.), CM/ECF No. 14-2, *with* Pl.'s Br. in Overly, No. 10-2392 (M.D. Pa.) CM/ECF at 16-1; Pl.'s Br. in Williams, No. 10-5766 (E.D. Pa.) at CM/ECF No. 8-1; Pl.'s Br. in Brass, No. 11-1611 (E.D. Pa.) CM/ECF at 6-1; Pl.'s Br. in Alexander, No. 11-401 (E.D. Pa.) CM/ECF at 5-1; *and* Pl.'s Br. in Rivera, No. 11-402 (E.D. Pa.) CM/ECF No. 4-1. In addition, the documentation supporting counsel's desired rates, *e.g*, the Borntrager Affidavit and counsel's affidavits, are nearly identical. The only noticeable difference is the first approximately two or so pages of each brief, which succinctly describe the procedural history of the individual cases.

The Court understands the practicality of form based practice and the use of templates in order to economically prosecute a case. However, should not those economies be passed on to the fee payer? Here, Plaintiffs' counsel has billed 3.2 hours and $960.00 preparing the opening fee brief and supporting affidavits and documents in this case. See Pls.' Br., Ex. B, CM/ECF No. 14-4, at 6 (entry dated 6/3/11). In three of the prior Pennsylvania cases, counsel has billed the same 3.2 hours and same $960.00 to prepare and edit the same brief and supporting documents, including billing 3.2 hours (with a verbatim description of work performed) in two cases -- Overly and Alexander -- on the same day to edit and revise the same materials. *Compare* Alexander, No. 11-401 (E.D. Pa.), CM/ECF No. 5-3, at 4 (entry dated 4/13/11), *with* Rivera, No. 11-402 (E.D. Pa.), CM/ECF No. at 4-3 (entry dated 4/13/11); see also Overly, 10-2392 (M.D. Pa.),

7

repetitive nature of Plaintiffs' fee petition does not constitute the gravamen of Defendant's opposition to the quantum of fees sought, and therefore, the Court will proceed with the traditional analysis.

### 1. Hourly Rates

In evaluating the reasonableness of Plaintiffs' hourly rates, the relevant inquiry is the prevailing rate for comparable legal services in the forum of litigation. See, e.g., Interfaith Comm. Org. v. Honeywell, Intern., Inc., 426 F.3d 694, 705 (3d Cir. 2005). The plaintiff bears the burden "of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." Smith, 107 F.3d at 225. "The fee applicants burden may be satisfied by the submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community." Apple Corps., 25 F. Supp. 2d at 493. A reasonable rate is determined by "assessing the experience and skill of the prevailing party's attorneys and compar[ing] the

---

CM/ECF No. 16-3 at 6 (entry dated 6/2/11). Finally, in the other two Pennsylvania cases, substantial and comparable time was also billed. See Williams, 10-5766 (E.D. Pa.), CM/ECF No. 8-3 (entry dated 3/17/11; 3 hours spent preparing and editing the fee brief and related submissions); Brass, 11-1611 (E.D. Pa.), CM/ECF No. 6-3 (entry dated 4/27/11; 2.7 hours spent editing fee brief and related submissions). This, despite the statement in Plaintiffs' memorandum of law filed in this case that there "is no 'assembly line' approach to handling FDCPA cases." (Pls.' Br. 13.)

While this billing would probably be reduced, it need not be done so on this basis because, as explained *infra*, this billing relates to the preparation of the motion for fees, all of which occurred after the date of the offer of judgment and is barred for that reason.

rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001). The Court has broad discretion in determining an appropriate hourly rate. See Washington, 89 F.3d at 1036.

Plaintiffs had four attorneys and two paralegals billing at the following rates: Craig T. Kimmel, Esq. ($425.00 per hour); Amy L. Bennecoff, Esq. ($300.00 per hour); Sarah Young, Esq. ($300.00 per hour); Tara L. Patterson, Esq. ($300 per hour).[3] They also had two paralegals bill time to the file, Christy Sunchych ($165.00 per hour) and Jason Ryan ($155.00 per hour). To support their proffered rates, Plaintiffs' counsel rely on their credentials and three sources: (1) the 2007 Consumer Law Attorney Fee Survey; (2) the U.S. Attorney "Laffey Matrix"; and (3) an affidavit executed by an associate attorney at a consumer practice firm in California, Nicholas Bontrager, Esq. (Pls.' Br. 22-27.)[4]

Defendant contends the rates are above market rate for comparable services in New Jersey, have been rejected by other courts in this Circuit evaluating fee petitions by

---

[3] Ms. Bennecoff is an associate admitted to the New Jersey Bar in December, 2005. (Bennecoff Aff., ¶ 4.) Mr. Kimmel is a senior partner who states he has been representing consumers since 1989. (Kimmel Aff., ¶ 9.) Ms. Patterson is an associate licensed to practice since 2001. (Patterson Aff., ¶ 4.) Ms. Young is also an associate, and she has been licensed to practice since 2004. (Young Aff., ¶ 5.) Of the four attorneys billing time to the file, only Ms. Bennecoff and Ms. Young are admitted in the State of New Jersey and were the only attorneys of record in this case. Mr. Kimmel and Ms. Patterson did not seek *pro hac vice* admission in this case and did not take part formally in any of the proceedings.

[4] These are the same sources that have been held inadequate by four Pennsylvania courts to support the same billing rates offered here.

Plaintiffs' counsel in Fair Debt cases, and are not supported by any evidence evincing a connection to practice in New Jersey.  Defendant also submits a declaration prepared and filed in another case by Jeffrey S. Hyslip, Esq., the managing member of national law firm engaged in fair collection law, which was adopted by another court in this district.  (Def.'s Opp'n, Ex. D; CM/ECF No. 16-4.)[5]  Finally, Defendant relies on various cases decided in New Jersey that fixed Plaintiffs' consumer protection fees at a lower level.  Defendant proposes the following alternative rates for Plaintiffs' counsel:  Mr. Kimmel ($325.00); Ms. Patterson ($250.00); Ms. Bennecoff ($250.00); Ms. Young ($200.00); and Mr. Ryan ($125.00).

This Court finds that Plaintiffs' billing rates should be adjusted.  First, as Defendant correctly notes, the Consumer Law Survey, a compilation of rates reported by members of the consumer protection bar, has nothing whatsoever to do with, or indicate the practice relating to, FDCPA cases in New Jersey.  As the Williams court noted, "[t]he court is not aware of any court within this Circuit that has relied upon the Consumer Law Attorney Fee Survey," in fixing reasonable hourly rates.  See 2011 U.S. Dist. LEXIS 50635, at *14.

Second, Plaintiffs' reliance on the "Laffey Matrix" fails.  Back to Williams:

---

[5]  The declaration was submitted in connection with the action titled Ford v. Consigned Debts & Collections, Inc., No. 09-3102 (NLH), CM/ECF No. 12-2.  The declaration proposes rates of $300.00 for a senior partner, trending downward to $250.00 to $200.00 for additional counsel and $125.00 for staff.  The proposed rates were adopted.  See 2010 WL 5392643, at *8 (D.N.J. Dec. 21, 2010).

> Plaintiff also suggests that the market rate should be determined by reviewing the 'Laffey Matrix,' which takes its name from the case in which this matrix was first used, Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd, 746 F.2d 4 (D.C. Cir. 1984). The Laffey Matrix provides billing rates for attorneys in the Washington D.C. area and is not particularly pertinent in this case, where the relevant market is the Eastern District of Pennsylvania.

Id. at *13 n. 5. The same holds true here—*i.e.*, the "Laffey Matrix" does not address reasonable rates in New Jersey.

Third, the affidavit submitted by Mr. Borntrager does not establish that Plaintiffs' proffered rates are appropriate in New Jersey. Mr. Borntrager is not admitted in New Jersey, nor does he profess to represent clients in New Jersey. He is a fairly recent (2007) law school graduate with no connection to this forum.

In contrast, Defendant submits evidence of the prevailing rates for comparable work in New Jersey. For example, Defendant submits and relies on the certification by Mr. Hyslip, which was adopted as reasonable by District Judge Hillman. It also cites to a declaration submitted in another New Jersey action, Franklin Smith v. Lyons Doughty & Veldhuis, No. 07-5139 (JHR), in which the Court approved a $325.00 hourly rate for the lead partner in a class action who had, at that time, litigated more than 40 similar cases in New Jersey. See id. No. 07-5139; CM/ECF No. 29. Finally, Defendant points to case law from New Jersey that sets hourly rates for senior partners in fair debt cases at $325.00 per hour. See, e.g., Stair v. Thomas & Cook, No. 06-4454, 2009 WL 1635346, at *2 n.4 (D.N.J. June 10, 2009) (Simandle, J.; approving hourly rate of $325.00 for senior partner

in FDCPA case).[6]

Exercising its discretion and after considering the circumstances here, the Court will adopt Defendant's proposed hourly rates. The rates are supported by Defendant's opposition, are comparable to those awarded to counsel in Franklin Smith and Stair, and have a rational connection to the practice in New Jersey. Indeed, they are quite ample for a straightforward case that was resolved as soon as it was started. Also, it should be noted that the rates Defendant proposes, and this Court adopts, are actually higher than those found to be reasonable and appropriate for the same lawyers in a FDCPA case just a few months ago. See Overly, 2011 WL 2651807, at *6.[7] Finally, the Court's approval of these rates in this case does not necessarily mean that the Undersigned would approve the same rates for the same lawyers in any other case.

Based on the above, Plaintiffs' legal representatives' hourly rates in this case will

---

[6] For the first time in their reply papers, Plaintiffs' counsel claim that a 2010 National Law Journal Survey ("NLJS") also supports their billing rates. (Pls.' Reply Br. 13.) The NLJS survey states that partners in New Jersey may bill between $305.00 and $790.00, and that associates bill, on average, between $289.00 and $313.00 per hour. (Id.) The Court does not find that this survey supports Plaintiffs' desired hourly rates in this area of practice in this forum. For one, the hourly rate set for Mr. Kimmel is within the range regularly billed by partners in New Jersey, and the hourly rates chosen for Ms. Bennecoff, Ms. Young, and Ms. Patterson are comparable to the NLJS rates. For another, other resources have billing rates for New Jersey lawyers on different scales. See, e.g., Ford v. Consigned Debts & Collections, Inc., No. 09-3102 (NLH), 2010 WL 5392643, at *8; CM/ECF No. 12-2 (associate counsel at $250.00 to $200.00 in FDCPA case).

[7] In Overly, the Court set the following rates: Mr. Kimmel ($300.00); Ms. Patterson ($250.00); Ms. Bennecoff ($200.00); Ms. Young ($200.00); and paralegals ($70.00). While the Court might be inclined to follow the rates set by the court in Overly, it will not do so *sua sponte* and will instead adopt Defendant's proposed rates.

be: Mr. Kimmel ($325.00); Ms. Patterson ($250.00); Ms. Bennecoff ($250.00); Ms. Young ($200.00); Mr. Ryan ($125.00); Ms. Sunchych ($125.00).[8]

## 2. Reasonableness of Hours Expended

### i. Hours Billed After the Date of the Offer of Judgment

Defendant objects to 8.3 hours of time billed by Plaintiffs' legal representatives as billed after the date of the Offer of Judgment, and thus, not recoverable. (Def.'s Br. 4.) Federal Rule of Civil Procedure 68 provides that a party may serve "on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Id. Costs and attorney's fees accrued as of the date of the offer is served are generally recoverable. See Marek v. Chesny, 473 U.S. 1, 9 (1985). However, "an [o]ffer of judgment is a contract, and if a party has agreed to the accrual date therein, that date will control." Williams, 2011 U.S. Dist. LEXIS 50635, at *10. Thus, if an offer of judgment states that attorney's fees are recoverable only to a specific date, that date controls. See, e.g., id.; Holland v. Roeser, 37 F.3d 501, 503 (9th Cir. 1994).

Here, the Offer is dated April 24, 2011, and it specifically states that attorney's fees will only be recoverable through "the date of the Offer." (CM/ECF No. 12; emphasis added.) Thus, Defendant contends that no fees are recoverable beyond that date. Plaintiffs counter that offer is ambiguous, and that the Court should "allow

---

[8] Defendant does not actually propose an alternate rate for Ms. Sunchych, contending that all of her time should be excluded. The Court sets Ms. Sunchych's rate the same as Mr. Ryan's, as they are paralegals with comparable experience.

13

Plaintiffs to recover fees accrued" through the date of acceptance, May 8, 2011.  (Pl.'s Reply Br. 3.)[9]

The Offer of Judgment is clear.  It plainly states that reasonable attorney's fees may be recovered through *"the date of the Offer*," which is April 24, 2011. (CM/ECF No. 12; emphasis added.)   That is an enforceable temporal limitation on Plaintiffs' potential attorney's fees.  See, e.g., Sussman v. Patterson, 108 F.3d 1206, 1210 (10th Cir. 1997).  Moreover, in the same Pennsylvania cases reducing Plaintiffs' hourly rates, the courts have also rejected the same supposed "ambiguity" in the offers of judgment, which were basically identical to the offer of judgment accepted in this case.  See, e.g., Williams, 2011 U.S. Dist. LEXIS 50635, at *10; Alexander, 2011 WL 2415156, at *3-4; Brass, 2011 WL 3862145, at *3.  Accordingly, all hours accrued after April 24, 2011, will be excluded.[10]

    **ii.**    **Administrative Hours**

A district court must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary."  Interfaith Cmty. Org., 426 F.3d at 710.  When

---

[9] It is unclear whether by making this argument Plaintiffs are conceding that time billed after May 8, 2011, is properly excluded—as Plaintiffs have billed 5.4 hours of additional time after that date.  Whatever the intention, it is of no moment.  As stated above, the Court finds that the proper cut-off date is the date of the Offer of Judgment.

[10] This includes: 6.5 hours of time attributable to Ms. Bennecoff; 1.2 hours for Ms. Sunchych; 0.5 hours for Mr. Kimmel; and 0.1 for Ms. Young.

specific objections have been lodged, a court will engage in a "thorough and searching analysis," to cull fees that should be excluded. Evans, 273 F.3d at 362. Time that can not be billed to a client may not be billed to an adversary. See Hensley, 461 U.S. at 433.

Defendant objects to 2.9 hours as non-compensable administrative work. (Def.'s Br. 5.) Administrative tasks not normally billed to clients such as "opening a file in a database, mailing letters, and copying documents to a CD," may not be recovered by a party through a fee petition. Alexander v. NCO Fin. Sys., 2011 WL 2415156, at *6; see also Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995); Spegon v. Catholic Bishop of Chi, 175 F.3d 544, 552 (7th Cir. 1999). However, tasks such as "discussions with a client, creating a factual summary, and preparing an outline of linked events, have been included in calculations . . . even if performed by a paralegal." Brass, 2011 WL 3862145, at *5.

Defendant contests 11 individual time entries as reflecting non-compensable administrative work. (Def.'s Opp'n, Ex. B; CM/ECF No. 16-2.) The Court finds that the majority of that time is not purely administrative and should not be excluded on that basis. However, the hours entered by Mr. Ryan on May 10, 2010, should be reduced from 0.8 hours to 0.5 hours because 0.3 hours were spent on the administrative tasks of opening a file and preparing calendar updates. See Brass, 2011 WL 3862145, at *5-6; Alexander, 2011 WL 2415156, at *7; Williams, 2011 U.S. Dist. LEXIS 50635, at *20-21. Also excluded will be 0.2 hours billed by Ms. Sunchych entered on April 21, 2011, as

15

administrative.  Id.  Thus, the Court will sustain Defendant's objection as to 0.5 of the 2.9 hours of supposedly administrative work, and reduce the reasonable hours expended for Mr. Ryan by 0.3 and Ms. Sunchych by 0.2.

### iii.     Additional Objections

Defendant objects to a series of additional entries reflecting internal communications, emails, and review of pleadings as duplicative and unnecessary.  While the Court suspects that the case was overstaffed and has concern about the amount of time expended, it will not, without more, exclude hours from the lodestar calculation simply because they reflect attorney-to-attorney communications within the office.  However, the time billed on April 14, 2011, in preparation for the scheduling conference will be reduced.  Plaintiffs seek reimbursement for 1.9 hours spread among four different billers – attorneys Sarah Young, Craig Kimmel, and Amy Bennecoff, and paralegal Christy Sunchych – which is largely comprised of time entries for sending and receiving interoffice emails of a generic nature "re: conference."  See CM/ECF No. 14-4 at 4.  The hours billed on that date will be reduced from 1.9 to 0.8, eliminating all time billed on that date other than Ms. Bennecoff's entry of 0.6 hours and Ms. Young's entry of 0.2 hours.  See id.

Likewise, the Court will reduce Ms. Young's 1.3 hours billed in connection with the conference call with the Undersigned on April 15, 2011.  The time entry claims billable time for "preparation for the conference call," the conference call itself, and

16

"email memo on conference to ALB." See CM/ECF No. 14-4 at 4. In so much as time is allocated to "preparation for the conference call," it will be excluded. As Defendant observes, during the conference call, Ms. Young repeatedly referred to Ms. Bennecoff as the attorney handling the file. (Def.'s Br. 8.) Also based on observation, the Court agrees that preparation time for Ms. Young should be reduced. Plaintiffs have not specifically allocated time for "preparation" within the larger block billing entry; however, based on the length of the call and it being reasonable to prepare a memo to a supervising attorney after a conference, the Court will allocate 0.5 hours as "preparation for the conference" and exclude it from the lodestar calculation.

Based on the above, the following will be excluded: 0.5 hours from Ms. Young (0.5 on April 15, 2011); 0.7 from Ms. Bennecoff (April 14, 2011); 0.2 from Mr. Kimmel (April 14, 2011); and 0.2 from Ms. Sunchych (April 14, 2011).

### 3. **Lodestar Calculation**

Plaintiffs' counsel will be billed at the following hourly rates: Mr. Kimmel ($325.00); Ms. Patterson ($250.00); Ms. Bennecoff ($250.00); Ms. Young ($200.00); Mr. Ryan ($125.00); and Ms. Sunchych ($125.00). All time billed after the date of the Offer of Judgment will be excluded, which includes: 6.5 hours attributable to Ms. Bennecoff; 1.2 hours for Ms. Sunchych; 0.5 hours for Mr. Kimmel; and 0.1 attributable to Ms. Young. Also excluded as administrative are 0.3 hours for Mr. Ryan and 0.2 hours for Ms. Sunchych. Finally, excluded as duplicative or unnecessary are the following hours: Ms.

Bennecoff 0.7 hours; Ms. Young 0.5 hours; Mr. Kimmel 0.2 hours; and Ms. Sunchych 0.2 hours.  Total reductions are 10.4 hours, allocated per attorney as follows: Ms. Bennecoff 7.2 hours; Ms. Sunchych 1.6 hours; Mr. Kimmel 0.7 hours; Ms. Young 0.6 hours; and Mr. Ryan 0.3 hours.[11]  The lodestar is:

| **Legal Professional** | **Hours** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Craig Kimmel, Esq. | 2.1 | $325.00 | $682.50 |
| Tara Paterson, Esq. | 3.6 | $250.00 | $900.00 |
| Amy Bennecoff, Esq. | 8.1 | $250.00 | $2,025.00 |
| Sarah Young, Esq. | 4.3 | $200.00 | $860.00 |
| Jason Ryan | 1.3 | $125.00 | $162.50 |
| Christy Sunchych | 0.9 | $125.00 | $100.00 |
| **Total:** | **20.3** | | **$4,742.50** |

The lodestar reflects 20.3 hours and a total amount of $4,742.50.  The parties agree that the filing fee of $350.00 is recoverable.  Therefore, the total award is $5,092.50.

Defendant does not effectively argue a downward adjustment of the lodestar is appropriate in this case, and the Court will not do so *sua sponte*.  That said, the Court believes that the fee award in this case is generous, taking into account the formulaic and abbreviated nature of the case.  If faced with similar motions in the future, the

---

[11] Plaintiffs initially sought the following: Ms. Bennecoff 15.3 hrs.; Ms. Young 4.9 hrs.; Ms. Patterson 3.6 hrs.; Mr. Kimmel 2.8 hrs.; Ms. Sunchych 2.5 hrs.; and Mr. Ryan 1.6 hrs.  (Pls.' Br. 2-3.)

Undersigned will further explore the billing practices employed and consider holding a formal hearing on the subject. In doing so, the Undersigned will also carefully consider whether the fee sought is commensurate with the results obtained, and may be inclined to reduce awards, upon a proper showing, accordingly.[12]

\*   \*   \*

Although the fees in dispute are relatively small, the integrity of the billing process in small Fair Debt cases is called into question. Often, the law firms involved on both sides are the same. This Court has observed that liability is commonly resolved immediately and the real dispute presented to the federal court is about legal fees. Deciding the fee issue can be time consuming, even though the sums in dispute are often similar to numbers handled by small claims courts. Drawing no conclusions here, the Undersigned believes it bears further observation.[13] Specifically, whether the practice on

---

[12] See, e.g., Gastineau v. Wright, 592 F.3d 747, 748 (7th Cir. 2010) (reducing lodestar attorney's fees by more than 50%); Schlacher v. Law Offices of Philip J. Rotche & Assoc., 574 F.3d 852, 854 (7th Cir. 2009) (affirming 50% reduction in attorney's fees sought based on district court's conclusion that there was "unnecessary use of multiple attorneys" and "excessive billing in a straightforward short-lived case."); Thornton v. Wolpoff & Abramson, 312 Fed. Appx. 161, 162 (11th Cir. 2008) (reducing attorney's fees by 85%); Giovannoi v. Bidna & Keys, 255 Fed. Appx. 124, 125 (9th Cir. 2007) (reduction of more than 50% after offer of judgment was accepted); Carroll v. Wolpoff & Abramson, 53 F.3d 626, 627-29 (4th Cir. 1995) (affirming reduction in fee request of $9,783.63 to $500.00 based on, among other things, recovery of only $500.00 in damages)

[13] This is worthy of consideration given the fact that, according to CM/ECF records, it appears that Plaintiffs' counsel, alone, has filed more than 130 cases in this District in the last two years.

the ground is consistent with the intent of the Fair Debt Act.

## CONCLUSION

For the reasons stated above, it is respectfully recommended that Plaintiffs' motion for attorney's fees and costs be **GRANTED IN PART AND DENIED IN PART**.  It is recommended that Plaintiffs' counsel be awarded $4,742.50 in attorney's fees and $350.00 in costs and expenses for a total award of $5,092.50.


                                        s/Mark Falk
                                        **MARK FALK**
                                        **United States Magistrate Judge**


**Dated: September 23, 2011**